RENDERED: JUNE 13, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky



2017-SC-000203-DG
AND
2017-SC-000604-DG

DATE 7/5/19 Kim Redmon, DC

SHANNON JONES, KENTUCKY PAROLE BOARD, AND JUSTICE & PUBLIC SAFETY CABINET

APPELLANTS/CROSS-APPELLEES

V.

ON REVIEW AND CROSS-REVIEW FROM COURT OF APPEALS
CASE NO. 2015-CA-001878-MR
FRANKLIN CIRCUIT COURT NO. 15-CI-00477

DAVID WAYNE BAILEY

APPELLEE/CROSS-APPELLANT

## OPINION OF THE COURT BY JUSTICE HUGHES

## AFFIRMING IN PART AND REVERSING IN PART

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the United States Supreme Court established that individuals with conditional freedom privileges – parolees and probationers – are entitled to due process when faced with revocation of their freedom. Minimally, a two-stage process is required, beginning with a preliminary hearing at which a hearing officer determines whether probable cause exists that the offender committed the alleged violation(s), followed by a final revocation hearing which goes beyond a probable cause determination to a final evaluation of contested facts and ultimate decision. The overarching issue in this case is whether an offender placed on post-incarceration supervision —

a status treated like parole in Kentucky — receives a constitutionally sufficient final revocation hearing before the Kentucky Parole Board (Parole Board or Board) under the current procedures. We conclude the Kentucky Parole Board's final revocation hearing procedures do not meet the minimal due process required by *Morrissey* and *Gagnon.*

The Board does not conduct a final evidentiary hearing that extends beyond the initial probable cause determination nor does it inform the offender of his right to request counsel for that final revocation hearing. While Kentucky currently employs a two-stage process, it fails to satisfy federal constitutional standards. Due process requires that the Parole Board inform the offender of his right to request counsel to represent him at the final hearing; conduct the constitutionally-required final evidentiary hearing prior to revocation; provide the offender timely notice of the time and place of that final hearing; consider the evidence and determine pursuant to the preponderance of the evidence standard whether the offender committed the alleged violation(s); and timely inform the offender in writing of the Board's decision, including the evidence relied on and reasons for the decision. The facts of this case illustrate the constitutional shortcomings in the current supervision revocation process.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellee/Cross-Appellant David Wayne Bailey was convicted of first-degree sexual abuse. After serving a five-year sentence for that crime, he was released from the Department of Corrections' custody to a five-year period of

post-incarceration supervision (supervision).[1] A condition of the supervision was successful completion of a sex offender treatment program (SOTP). Bailey enrolled in a SOTP but did not complete the program, a fact that Bailey does not dispute. The SOTP clinician reported that Bailey was terminated for failure to comply with two program provisions: he was not making efforts to accept responsibility for his sexual convictions and he was disrupting his therapy group.

Shortly thereafter, Bailey received notice that due to his failure to complete sex offender treatment as directed, a preliminary revocation hearing would be held on July 16, 2013. The portion of that written notice relevant to the issues presented in this matter is set forth in the accompanying footnote.[2]

---

[1] With the passage of House Bill 463 in 2011, the references in Kentucky Revised Statute (KRS) 532.043 to "conditional discharge" were replaced with "post-incarceration supervision."

[2] Bailey was informed of his rights and responsibilities as follows:

> During this hearing, you will have an opportunity to present witnesses and/or documents and to question the witnesses who testify against you (unless disallowed by the Hearing Authority). The hearing will be an evidentiary hearing, all information produced in this hearing may be considered by the Parole Board at the final hearing.

> You have the right to be represented by a lawyer. If you hire a lawyer you should do so immediately and provide him or her with a copy of this Notice. If you cannot afford a lawyer, you should notify your Probation and Parole Officer immediately so that a Public Defender can be appointed. Failure to do so can result in your having to proceed without a lawyer. You have a right to request a continuance for good cause from the Hearing Authority.

> You may waive (give up the right to) the Preliminary Parole Revocation Hearing and have your case submitted directly to the Parole Board by admitting that you are guilty of each and every violation. Notify your Parole Officer immediately if you wish to do so.

An administrative law judge (ALJ) conducted the preliminary hearing at which Bailey was represented by counsel and was allowed to present witnesses and evidence, including mitigating testimony. Bailey strongly disputed the reasons given for his SOTP termination, contending that he was actually terminated from the program due to his expression of his anti-abortion views, views that conflicted with the clinician's. The ALJ found probable cause to believe that Bailey had violated his supervision conditions by being terminated from the SOTP. Bailey was subsequently served with a violation warrant and remained in custody pending the final hearing before the Parole Board.

Bailey was not provided notice of the time and place of the final revocation hearing, did not have counsel to represent him at that hearing, and was not able to present witnesses or further testimony on the alleged violations. After the hearing, the Parole Board revoked Bailey's post-incarceration supervision. The Board declined Bailey's request for reconsideration, finding no misconduct or significant procedural error and no significant new evidence that was not available at the preliminary hearing.

Bailey, *pro se*, filed a petition for a writ of mandamus in Franklin Circuit Court challenging the Board's procedures on due process grounds. He particularly stated that he was denied due process because at the final hearing stage he did not have assistance of counsel, he was not allowed to present mitigating factors, and he was not allowed to call witnesses. The trial court

granted the Board's CR[3] 12.02 motion to dismiss for failure to state a claim. On appeal, the Court of Appeals concluded Bailey was not denied due process in the final revocation hearing when he was not permitted to introduce evidence. However, the Court of Appeals held that KRS 31.110(2)(a) creates a statutory right to counsel for offenders at post-incarceration supervision final revocation proceedings.[4] Consequently, the Court of Appeals reversed the trial court's dismissal of Bailey's petition and remanded the case for further proceedings.

This Court granted the Parole Board's motion for discretionary review to resolve whether KRS 31.110 creates a right to counsel and Bailey's cross-motion for discretionary review to resolve whether the Kentucky Parole Board denied Bailey due process by failing to afford him an opportunity at his final revocation hearing (1) to present witnesses or other evidence of mitigating factors or (2) to cross-examine the evidence against him. We conclude that Bailey's procedural due process rights, including potentially a right to counsel, were violated at the final revocation hearing, but also conclude that KRS 31.110(2)(a) does not create a statutory right to counsel for offenders at post-incarceration supervision final revocation proceedings. Accordingly, we affirm in part and reverse in part the Court of Appeals' reversal of the circuit court.[5]

---

[3] Kentucky Rule of Civil Procedure.

[4] A right to counsel pursuant to KRS 31.110 was not raised by the parties before either the trial court or the Court of Appeals.

[5] Since Bailey's SOCD completion date was November 26, 2017, one month after this Court granted discretionary review, a new final revocation hearing is no longer available relief in this case.

## ANALYSIS

### I. THE PUBLIC INTEREST EXCEPTION TO THE MOOTNESS DOCTRINE APPLIES TO THE DUE PROCESS ISSUES

We begin our review with the observation that during the appellate process, Bailey's post-incarceration supervision term expired.[6] Although the issues presented could be regarded as moot, the Parole Board has not raised that issue. "The general rule is . . . that 'where, pending an appeal, an event occurs which makes a determination of the question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed.'" *Morgan v. Getter*, 441 S.W.3d 94, 99 (Ky. 2014) (citations omitted). However, as explained in *Morgan*, the general rule has a "public interest" exception. "The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *Id.* at 102.

These three elements are present in this matter as to the due process issues presented. First, the provision of procedural due process pertaining to the revocation of conditional freedom is a matter of public interest. Second, as one of the Parole Board's regular and primary duties is deciding whether those

---

[6] The Board denied Bailey's request for reconsideration of its revocation decision on August 29, 2013. Approximately one and one-half years later, Bailey initiated the present action in Franklin Circuit Court. Following the Court of Appeals' March 31, 2017 decision, this Court granted discretionary review on October 25, 2017, one month prior to Bailey's SOCD completion date. Oral arguments were held in October 2018.

alleged to have violated a term of their conditional freedom should have their post-incarceration supervision revoked, a determination whether the revocation procedures meet constitutional demands will assist the Board in the exercise of its official duties. Third, because the employment of current administrative procedures is a recurrent event in the revocation process, it is highly likely that these procedural due process questions will again arise. With all three elements of the public interest exception being present here, we are satisfied that guidance from the Court as to the due process issues is proper and a matter of urgency.

Before turning to the merits, we note that Bailey raises one issue which does not meet an exception to the mootness doctrine. Bailey initiated this action in the Franklin Circuit Court challenging the Board's revocation decision. He sought a new, legally proper revocation hearing and requested the trial court to compel the Parole Board to reinstate his post-incarceration supervision and to allow him to reapply to SOTP. Claiming that the trial court erred when it dismissed his petition for failure to state a claim, Bailey thus asks this Court to vacate the trial court's judgment and to remand this case with instructions to find in his favor. Bailey's personal claim that the trial court erred by dismissing his petition is now moot, however, and does not meet the "collateral consequences," "voluntary cessation," "capable of repetition, yet evading review," or the "public interest" exceptions to the mootness doctrine. *See id.* at 99-100. Consequently, this Court will not review this claim of error

7

although it will address the due process issues raised, all of which are properly preserved for our review unless otherwise noted.

## II. PROCEDURAL DUE PROCESS ISSUES RENDER THE SUPERVISION REVOCATION PROCEDURE CONSTITUTIONALLY INADEQUATE

Bailey does not complain about the sufficiency of the first hearing, the probable cause hearing. Instead he contends that his due process rights were violated by the Parole Board's[7] failure to conduct a constitutionally sufficient final hearing prior to revocation of his supervision. Foremost, Bailey challenges the constitutionality of the Parole Board's procedures which deny an alleged post-incarceration supervision violator the right to a final hearing where he can present evidence and be represented by counsel before his supervision is revoked.

Although Bailey does not complain about the sufficiency of his preliminary probable cause hearing, the procedures employed in that hearing are relevant for comparison to the procedures employed in the final revocation hearing during which the Board must decide the truth of the violation allegations. Also, as described below, the Board relies upon the preliminary hearing procedure to argue its administrative structure for supervision revocation satisfies due process requirements. We begin by reviewing the requirements the United States Supreme Court has deemed necessary to

---

[7] This Opinion refers to the Appellants/Cross-Appellees collectively as the Parole Board or Board.

satisfy the Fourteenth Amendment's Due Process Clause and then consider Kentucky's current revocation procedures.

### A. *Morrissey v. Brewer* & *Gagnon v. Scarpelli*: Minimum Due Process

Two United States Supreme Court landmark probation and parole cases issued in the early 1970s, *Morrissey*, 408 U.S. 471, and *Gagnon*, 411 U.S. 778, outline the procedures required in a conditional freedom revocation hearing. In its 1972 decision in *Morrissey*, the Supreme Court recognized that parolees have a protected liberty interest in the conditional freedom offered by parole and the state could not take away that freedom without affording the offender appropriate procedural safeguards. *Gagnon* followed in 1973 and instructed that the due process rights afforded parolees likewise protect the liberty interest of probationers.[8]

These two cases remain the United States Supreme Court's primary guidance on the procedural due process rights involved in the parole or probation revocation process. The Supreme Court explained that the revocation process consists of two important stages. The first encompasses the offender's arrest and probable cause hearing. *Morrissey*, 408 U.S. at 485-87; *see also Gagnon*, 411 U.S. at 786. The second stage is the final revocation hearing. *Morrissey*, 408 U.S. at 487-90; *see also Gagnon*, 411 U.S. at 786.

Although *Morrissey* and *Gagnon* establish guidance as to the minimal process due when an individual parolee's or probationer's conditional freedom

---

[8] *Gagnon* also addresses the right to counsel, discussed further *infra*.

may be revoked, the parties here do not dispute that these cases are also applicable to the "akin" post-incarceration supervision[9] revocation process at issue in this case. Like parole and probation revocation, post-incarceration supervision revocation results in a loss of liberty and the Parole Board's revocation procedure requires both a preliminary and a final hearing. As previously noted, the substance of the final hearing is at issue here but a full understanding of the procedure must begin with the preliminary or probable cause hearing.

### 1. The probable cause hearing

The *Morrissey* Court conceptualized the revocation probable cause hearing to be one of "minimal inquiry," *Morrissey*, 408 U.S at 485, 487. This minimal inquiry is to determine if probable cause or reasonable grounds exist to believe that the offender did in fact commit the acts that constitute a violation, with the probable cause determination being sufficient to hold the parolee for the Parole Board's final revocation decision. *Id.*

*Morrissey* identified certain requirements to minimally satisfy due process at the probable cause hearing. First, the hearing must be promptly conducted at or near the place of the alleged violation or arrest "and as promptly as convenient after arrest while information is fresh and sources are available." *Id.* at 485. Second, the probable cause determination "should be made by someone not directly involved in the case," *id.*, and "[t]his independent

---

[9] *See Jones v. Commonwealth*, 319 S.W.3d 295, 298 (Ky. 2010), describing the post-incarceration supervision (then termed "conditional discharge") statutory scheme as "akin to parole or an extension of parole."

10

officer need not be a judicial officer," *id.* at 486. Third, the offender should be given notice 1) that the hearing will take place, 2) that its purpose is to determine whether there is probable cause to believe he has committed a violation, 3) with the alleged violation(s) specifically identified. *Id.* at 486-87. Fourth, the offender is entitled to be present and speak on his own behalf. *Id.* at 487. Fifth, he may present letters, documents, and witnesses who can provide relevant information. *Id.* Sixth, if he requests it, and if a risk of harm is not created by disclosure of the informant's identity, he is entitled to have the witness upon whose statements the revocation notice is based to appear "for questioning in his presence." *Id.* Seventh, the hearing officer has the duty to summarize what occurs at the hearing in terms of the offender's responses and the substance of the evidence presented. *Id.* And eighth, the officer should determine whether there is probable cause to hold the offender for the final revocation hearing. The hearing officer should state the reasons for his determination and the evidence relied upon, but since this is not a final revocation determination, formal findings of fact and conclusions of law are not required. *Id.*

### 2. The final revocation hearing

Whereas the preliminary hearing is one of minimal inquiry, *Morrissey* instructs:

> [The final revocation] hearing *must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation.* The [offender] must have [a timely] opportunity to be heard and to show, if he can, that he did not

11

violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation.

*Id.* at 488 (emphasis added).

Tasked with deciding the minimum due process requirements and noting that writing a procedure code is the responsibility of each state, the *Morrissey* Court held that the final, fact-finding hearing must be held within a reasonable time after the offender is taken into custody, and then summarized the final hearing minimum requirements as including:

> (a) written notice of the claimed violations of parole [or probation];
> (b) disclosure to the parolee [or probationer] of evidence against him;
> (c) opportunity to be heard in person and to present witnesses and documentary evidence;
> (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);
> (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
> (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole [or probation].

408 U.S. at 489. Although, as noted in *Gagnon,* it is readily apparent that these elements are similar to the preliminary hearing's minimal requirements, the "final hearing is a less summary one [and 'somewhat more comprehensive'] because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause." 411 U.S. at 782, 786. "The first step in a revocation decision . . . involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole." *Id.* at 784 (citing *Morrissey,* 408 U.S. at 479).

12

## B. Kentucky's Written Procedure for Post-Incarceration Supervision Revocation

Kentucky Revised Statutes Chapter 439 provides authority for the Parole Board to conduct hearings when a person is charged with violations of parole and post-incarceration supervision, KRS 439.330(e), and to adopt administrative regulations regarding the conduct of parole and parole revocation hearings and all other matters that come before it, KRS 439.340(3)(b). However, KRS 439.341 prescribes that "[p]reliminary revocation hearings of probation, parole, and post[-]incarceration supervision violators shall be conducted by hearing officers" who must be attorneys appointed by the Board and admitted to practice in Kentucky. Kentucky Administrative Regulation (KAR) 501 KAR 1:070, entitled "Conducting sex offender post[-]incarceration supervision revocation hearings,"[10] and Kentucky Parole Board Policy and Procedures (KYPB) 30-01, Revocation of Post-incarceration

---

[10] 501 KAR 1:070 was promulgated in response to *Jones v. Commonwealth*, 319 S.W.3d 295 (Ky. 2010). *Jones* determined that former KRS 532.043(5) violated the separation of powers doctrine by impermissibly conferring executive power on the judiciary. Consequently, the Department of Corrections was left without an established procedure for returning an offender to custody for violating conditional discharge terms.

Enacted in 1998, KRS 532.043(5) originally made the judiciary responsible for revoking a sex offender's post-incarceration conditional release. It read:

> If a person violates a [sex offender conditional discharge] provision . . . the violation shall be reported in writing to the Commonwealth's attorney in the county of conviction. *The Commonwealth's attorney may petition the court to revoke the defendant's conditional discharge and reincarcerate the defendant* for no longer than the time remaining on the conditional discharge.

1998 Ky. Acts ch. 606 (emphasis added). The preceding highlighted provision remained unchanged until this Court declared it unconstitutional in *Jones*. KRS 532.043(5), as amended by House Bill 463 in 2011, currently provides:

13

Supervision: Preliminary Hearings, and 30-02, Revocation of Post-Incarceration Supervision: Final Hearings, contain the procedures at issue in this case. Unless indicated otherwise, the material aspects of the post-incarceration supervision revocation procedure at issue here are the same as the parole revocation procedure.[11]

### 1. Initiation of the revocation process

An offender may have his post-incarceration supervision revoked when he violates a term of his supervision. KRS 532.043(5). The revocation process is initiated when a Department of Corrections' parole officer provides notice of the violation(s) to the Parole Board and the offender. Along with setting forth the alleged violation(s), the written Notice of Preliminary Hearing contains the time and place of the hearing. KRS 532.043(5); 501 KAR 1:070 Section 1; KYPB 30-01 Sections A and B. The notice also informs the offender of his right to:

(a) Present evidence and favorable witnesses;

---

> If a person violates a [sex offender post-incarceration supervision] provision . . . the violation shall be reported in writing by the Division of Probation and Parole. Notice of the violation shall be sent to the Parole Board to determine whether probable cause exists to revoke the defendant's post[-]incarceration supervision and reincarcerate the defendant as set forth in KRS 532.060.

[11] The Parole Board states that sex offender conditional discharge (now referred to as post-incarceration supervision) is treated as parole under the statute, so the parole revocation procedures apply here.

Bailey agrees that the procedures for revoking either form of supervision are substantially similar, and takes no issue with using the terms interchangeably. However, he relies on the revocation procedures used in this case, i.e., 501 KAR 1:070, and Kentucky Parole Board Policies KYPB 30-00, 30-01, and 30-02. The Kentucky Parole Board Policies at issue are incorporated by reference in 501 KAR 1:080, Parole Board Policies and Procedures.

14

(b) Disclosure of evidence introduced at the hearing for purposes of proving the alleged grounds for revocation, except that that disclosure shall not be required of records or information: (i) protected from disclosure pursuant to KRS 439.510; (ii) if disclosure would reveal confidential informants or sources of information; or (iii) if disclosure would create or constitute a threat to safety or security of the participants in the hearing or any other person;

(c) Confront adverse witnesses, unless the witness is subject to a risk of harm or unless it would create or constitute a threat to safety or security of the participants in the hearing or any other person;

(d) Have counsel present; and

(e) Request postponement of the hearing for good cause.

KYPB 30-01 Section B(1).

## 2. The probable cause hearing

The preliminary hearing, conducted by an ALJ, 501 KAR 1:070 Section 1(5), KYPB 30-01 Section A, is an evidentiary hearing conducted on the record, 501 KAR 1:070 Section 1(4), KYPB 30-01 Section E. During this hearing the offender must "present all evidence the offender desires to make part of the administrative record." 501 KAR 1:070 Section 1(4)(c), KYPB 30-01 Section E(3). This includes evidence offered in mitigation of his conduct. 501 KAR 1:070 Section 1(5)(g). The record is not "supplemented with any new or additional evidence after the conclusion of the preliminary hearing," 501 KAR 1:070 Section 1(4)(d), KYPB 30-01 Section E(4), unless the new evidence or information is submitted by the offender in writing before the final revocation

hearing, 501 KAR 1:070 Section 3(3)(a), KYPB 30-01 Section E(4),[12] or unless

the Board grants a special hearing for introducing new or different evidence or

information relevant to the proceeding that could not have been presented at

the preliminary hearing, 501 KAR 1:070 Section 3(3)3, KYPB 30-02 Section

C(2)(c)(*iii*). Unlike 501 KAR 1:040 Section 6 (regarding final parole revocation

hearings) this regulation does not state that when a special hearing is granted,

a short continuance may be granted so the offender may secure counsel.

During the hearing, the ALJ may take judicial notice of acts of the Parole

Board, 501 KAR 1:070 Section 1(5)(a), KYPB 30-01 Section F(1). Witnesses

testify under oath and, unless good cause is shown, may be examined by the

other party or the ALJ. 501 KAR 1:070 Section 1(5)(b), KYPB 30-01 Section

F(2). The parole officer bears the burden of proof to show the offender violated

a condition of release, 501 KAR 1:070 Section 1(5)(d), KYPB 30-01 Section F(4),

and presents evidence first, 501 KAR 1:070 Section 1(5)(e), KYPB 30-01 Section

F(5). The offender is then given the opportunity to present evidence in defense

or mitigation. *Id.* If mitigation evidence is presented, the parole officer may

rebut it. 501 KAR 1:070 Section 1(5)(g), KYPB 30-01 Section F(7). Any further

proceedings are conducted at the ALJ's discretion. 501 KAR 1:070 Section

1(5)(f), KYPB 30-01 Section F(6). Although parole regulation 501 KAR 1:040

Section 6 states that the offender shall be notified at the preliminary revocation

hearing of his right to request a special hearing, neither post-incarceration

---

[12] Citing KYPB 30-02 Subsections C(2) and (3).

supervision regulation 501 KAR 1:070, KYPB 30-01, nor KYPB 30-02 contains a like statement.

At the conclusion of the preliminary hearing or within a reasonable time afterward, the ALJ makes a determination whether probable cause exists to believe the offender committed any or all of the violations alleged in the preliminary hearing notice. 501 KAR 1:070 Section 1(6). The ALJ issues a written decision within twenty-one (21) calendar days after the hearing. 501 KAR 1:070 Section 1(6)(a)2, KYPB 30-01 Section G(1). The offender's case is not referred to the Board unless the ALJ finds probable cause. 501 KAR 1:070 Section 1(6)(a)1, KYPB 30-01 Section G(1)(c). When the case is referred but without a recommendation otherwise, the Parole Board issues a violation warrant causing the offender to be brought before the Parole Board for a final revocation hearing. 501 KAR 1:070 Section 1(6)(a)1, KYPB 30-01 Section G(2)(a). If, based upon mitigating factors, the ALJ's non-binding recommendation to the Board is to not return the offender as a post-incarceration supervision violator, 501 KAR 1:070 Section 1(6)(b), the Board votes on the issuance of the violation warrant, 501 KAR 1:070 Section 1(6)(b)1, KYPB 30-01 Section G(2)(b). If a warrant is issued, the offender is brought before the Board for a final revocation hearing. 501 KAR 1:070 Section 1(6)(b)2, KYPB 30-01 Section G(2)(b)(*ii*).

### 3. The final revocation hearing

At the final revocation hearing, the charges contained in the violation warrant are explained to the offender who may then admit or deny them. 501

KAR 1:070 Section 3(2), KYPB 30-01 Section C(1). Unless the Board has received new evidence or information submitted in writing in advance of the final revocation hearing or a special hearing is held at the Board's discretion, and unless an exception is met, the Parole Board considers only the evidence in the administrative record made before the ALJ to determine what action should be taken, *i.e.*, whether the offender should be reincarcerated as a supervision violator. 501 KAR 1:070 Section 3(1) and (3), KYPB 30-02 Section C(2) and (4).[13,14]

If a special final hearing is held, it proceeds much like the preliminary hearing, but the Board rather than the ALJ conducts the hearing.[15] The Board presents a short statement of the charges against the offender. 501 KAR 1:070 Section 3(4)(c)2, KYPB 30-02 Section C(3)(c)(*ii*). Witnesses testify under oath. 501 KAR 1:070 Section 3(4)(c)1, KYPB 30-02 Section C(3)(c)(*i*). The parole officer presents evidence to substantiate the charges and the offender may

---

[13] Department of Corrections Policy and Procedure (DOC P&P) 27-19-01, Preliminary Revocation Hearing, Section I defines "revocation hearing" as "a hearing before the releasing authority to determine whether the offender *is in violation*" of his probation or parole. (Emphasis added.) Unlike when defining the preliminary revocation hearing, DOC P&P 27-19-01 does not state that "probable cause" is the standard being used.

[14] Given that the Board states that the parole revocation procedure applies here, we note that a procedure exists to allow additional evidence at a final hearing. DOC P&P 27-19-01 Section III K.1. states that for a parolee, "At the final revocation hearing, the Parole Board may subpoena the supervising officer and case records. The officer shall offer any testimony requested by the Board."

[15] The special hearing procedure is the same under post-incarceration supervision regulation 501 KAR 1:070 Section 3(4) and parole regulation 501 KAR 1:040 Section 7. Contrary to the description provided by the Board's counsel, these regulations specify that the special hearing is conducted by the Board.

cross-examine him. 501 KAR 1:070 Section 3(4)(c)3, KYPB 30-02 Section C(3)(c)(*iii*). The offender may offer rebuttal evidence, subject to the parole officer's rebuttal evidence and testimony. 501 KAR 1:070 Section 3(4)(c)4, KYPB 30-02 Section C(3)(c)(*iv*). The parole officer's rebuttal proof is subject to cross-examination. 501 KAR 1:070 Section 3(4)(c)5, KYPB 30-02 Section C(3)(c)(*v*). The Parole Board may question the offender, the parole officer, and any witness. 501 KAR 1:070 Section 3(4)(c)6, KYPB 30-02 Section C(3)(c)(*vi*).

At the conclusion of the final hearing, the Parole Board makes a determination to return the offender to supervision or to revoke the supervision, 501 KAR 1:070 Section 3(5),[16] due to the violation of one or more conditions of supervision, KYPB 30-02 Section C(4). The determination is normally communicated verbally at the conclusion of the hearing. KYPB 30-02 Section C(4)(b). The written notice of the determination and a brief statement identifying the reasons for the decision and the evidence relied upon are to be provided no later than twenty-one (21) days from the date of the decision. 501 KAR 1:070 Section 3(5), KYPB 30-02 Section C(4)(a).[17] Under KRS 439.330(3),

---

[16] At the conclusion of the parole revocation hearing, the Board determines whether the parolee *has violated* his parole. 501 KAR 1:040 Section 7(2)(g).

[17] KYPB 30-02, rather than 501 KAR 1:070, details the contents of the Board's written decision. 501 KAR 1:070 Section 3(5)(a) provides that the offender shall be given written notification of the Board's decision within twenty-one (21) days from the date of decision. KYPB 30-02 Section C(4)(a) provides that the written determination shall provide a brief statement identifying the reasons for the determination and evidence relied upon. KYPB 13-02, Revocation of Parole: Final Hearings and Dispositions, Section C(4)(a) is like KYPB 30-02 Section C(4)(a).

19

"[t]he orders of the board [are not] reviewable except as to compliance with the terms of KRS 439.250 to 439.560."[18]

## C. The Final Revocation Hearing Procedures Violate Due Process

Bailey specifically argues that in Kentucky the final revocation hearing procedures violate minimal constitutional standards for revocation hearings imposed by *Morrissey* and *Gagnon* because a supervisee 1) is not given an evidentiary final revocation hearing where he can present evidence and confront witnesses; 2) may be revoked without a finding that he is guilty of the alleged violations by a preponderance of the evidence; 3) is not given an opportunity to request counsel (nor does the Board make an evaluation of whether counsel is required); 4) is not given notice of the time and place of the hearing; 5) is not given notice of all the evidence against him; and 6) is not given a clear statement of the basis for supervision revocation.[19]

---

[18] Currently, other than KRS 439.179, entitled "Release of misdemeanants; purposes for which permitted; earnings of prisoner, records, and disposition; authority of District Judge, jailer," KRS 439.250 to 439.560 contains all probation and parole statutes in effect within Chapter 439. Among other authorities, KYPB 30-01 and 30-02 collectively cite KRS 439.330, .340(3), .341, .346, .430, .480, .561, .562, .563, and .570 as authority for those policies and procedures.

[19] Bailey describes other aspects of the revocation procedure as violating the minimal due process prescribed by *Morrissey* and *Gagnon*. With the determination here that the Board's final revocation procedure does not meet minimal constitutional due process and must be revised, these other procedural issues should no longer arise.

The other problems identified by Bailey include the following. Once the ALJ determines probable cause exists that the alleged violation occurred, a procedure to challenge that determination does not exist. The offender may ask for reconsideration by submitting new information at a special hearing, but the grant of the special hearing is at the discretion of the Parole Board. Any notice the offender receives about availability of a special hearing comes through the ALJ's written decision, but the ALJ is not required to provide that information. Although the offender may be informed about the opportunity to submit new evidence in writing or request a special hearing, the offender does not receive notice of the final hearing by which point the new

20

The Board asserts that Bailey was afforded minimum due process by comparing *Morrissey*'s six listed procedural requirements for a *final* hearing to the procedures employed in preparation for and in conducting Bailey's *preliminary* hearing. The Board states that Bailey received written notice of the claimed violations of supervision, which included disclosure of the evidence against him; he was accorded an opportunity to be heard in person at a hearing conducted by a neutral and detached hearing body — the ALJ; Bailey had counsel present and his counsel had the opportunity to confront and cross-examine witnesses and to present witnesses and evidence, including witness mitigation testimony; the ALJ found probable cause to believe Bailey committed the alleged violation; the ALJ prepared a written statement as to the evidence relied on and the reasons for revoking supervision; the record of the proceeding was provided to the Board; and Bailey appeared before the Board. As to Bailey's complaint that he was not allowed to present his mitigating testimonial evidence from two pastors at the final revocation hearing, the Board argues that the testimony was presented to the Board through the administrative record created at the preliminary hearing. Similarly, the Board insists that since evidence is not being introduced and witnesses are not being examined at a final hearing, under *Gagnon*, discussed further *infra*, the offender is not entitled to an attorney because an offender may reasonably

___

evidence should be reported in writing or he should be prepared to verbally request a special hearing. Also, the Board does not ask at the final hearing if the offender seeks a special hearing or assistance of counsel.

21

address the Board and present any challenges to the ALJ's probable cause finding.

The Board concedes the final hearing is not an actual "hearing" but may be more appropriately termed a "final adjudication" since the Board only reviews the record to determine that the ALJ's probable cause finding is correct.[20] The Board also asserts that based upon the probable cause finding, the Board may then revoke the supervision. Citing KRS 532.043(5), the Board expressly insists that it is not required to find the offender actually committed the alleged violations by a preponderance of the evidence — probable cause suffices.

Upon review, we must agree with Bailey that he was denied due process at the final revocation hearing, *i.e.*, he did not receive the minimal process required by *Morrissey*: the revocation was improperly based upon a probable

---

[20] There are policy and procedures which refer to the ALJ as a fact finder. For example, DOC P&P 27-18-01, Probation and Parole Issuance of Detainer or Warrant, defines "preliminary revocation hearing" as a "hearing conducted by an [ALJ who] hears sworn testimony and considers documentary evidence for the purpose of determining whether there is probable cause that an offender violated the terms of his parole. *This hearing provides factual data to be reviewed by the Parole Board when determining what further action, if any, should be taken in the case.*" (Emphasis added.)

DOC P&P 27-19-01, Preliminary Revocation Hearing, also describes operational rules for the preliminary parole revocation hearing. Section 1 provides definitions. An administrative law judge is defined as "one who presides at an administrative hearing with power to administer oaths, take testimony, rule on questions of evidence and *make agency determination of fact.*" A preliminary revocation hearing is defined as a hearing conducted to determine whether probable cause exists that the offender has violated probation or parole and at which the ALJ gathers *factual data* to be reported to the releasing authority *for review* to determine whether a warrant should be issued or final revocation hearing scheduled. A revocation hearing is defined as a hearing before the releasing authority to determine whether the offender is in violation of his probation or parole. (Emphasis added.)

22

cause finding; the Board did not inquire whether Bailey sought the assistance of counsel prior to the final hearing; and Bailey did not receive timely notice of the final hearing and a final decision identifying the basis of the decision.[21] First, however, we address Bailey's argument that due process mandates an evidentiary final revocation hearing at which he could present evidence and confront witnesses.

### 1. An evidentiary final hearing is a minimal due process requirement which is not satisfied by the decisionmaker simply reviewing the preliminary hearing record.

Privileges like probation, parole and post-incarceration supervision set terms which allow an offender to be free from incarceration and to retain his liberty as long as he substantially abides by the terms of release. *Morrissey*, 408 U.S. at 478-79. "Revocation [of the privilege] deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty" enjoyed by complying with the imposed restrictions. *Id.* at 480. Although the offender's liberty interest is "indeterminate, [it] includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [offender]," *id.* at 482; thus it requires a procedure, albeit informal, "structured to assure that the finding of a . . . violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior," *id.* at 484.

---

[21] Although the Board's written decision is not part of the record, the Board does not dispute that Bailey received a summary decision.

*Morrissey*'s explanation of the requirements for a final hearing makes evident that it contemplates an actual "hearing" rather than mere review of the administrative record which was developed through minimal inquiry to allow a probable cause determination. To insure the Parole Board does not revoke conditional freedom without an adequate factual basis, the "hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts" with the offender given the "opportunity to show, if he can ,that he did not violate the conditions, or, if he did, that circumstances in mitigation" exist. *Morrissey*, 408 U.S. at 488. If it were somehow unclear to the Board that *Morrissey* prescribed both a preliminary and final hearing to satisfy procedural due process for conditional-freedom revocation proceedings, *Gagnon* remedied that confusion. *Gagnon* emphasized that a probationer is entitled to a preliminary and a final revocation hearing under the conditions set out in *Morrissey*. 411 U.S. at 781-82.

> When the officer's view of the probationer's or parolee's conduct differs [fundamentally] from the latter's own view [as conduct calling for revocation], due process requires that the difference be resolved before revocation becomes final. Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion—the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community.

> It was to serve all of these interests that Morrissey mandated preliminary and final revocation hearings. . . .

*Gagnon*, 411 U.S. at 785-86.

While no one suggests that the ALJ improperly conducted the probable cause hearing in this case, the Board is the body charged with determining the ultimate findings of fact. Because the conclusion that a supervision violation has occurred is one where "a wide variety of information may be deemed relevant, and issues of witness credibility and veracity are often critical to the decisionmaking process," reviewing the administrative record is only minimally reliable and a "wholly unsatisfactory basis for [a revocation] decision." *Mathews v. Eldridge*, 424 U.S. 319, 343-44 (1976). Bailey had a constitutional right to a hearing pursuant to procedures that enabled him to make his case to the Board, who would then have full awareness of all the evidence presented and would be able to decide whether there were any mitigating factors in his favor. Because Bailey was not afforded an evidentiary final revocation hearing where he could present evidence and confront witnesses,[22] we must conclude he was denied due process.

### 2. Conditional-freedom privilege revocation requires a finding by a preponderance of the evidence that the offender is guilty of the alleged violations.

Bailey next asserts that he was denied due process when his supervision was revoked without a finding that he is guilty of the violations by a

---

[22] As with other constitutional rights, an offender has the right to waive the presentation of evidence at the final hearing. *Commonwealth v. Green*, 194 S.W.3d 277, 283 (Ky. 2006) ("No one questions the right of a defendant in a criminal case to invoke the protection of any or all of his constitutional rights. On the other hand, we can find no sound reason to deny him the right of waiving procedural requirements which exist principally for his benefit.").

preponderance of the evidence. The issue of the proper standard of proof to revoke an offender's post-incarceration supervision is not preserved but Bailey seeks CR 61.02 palpable error review.

CR 61.02 states: "A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

> For error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable. The rule's requirement of manifest injustice requires showing a probability of a different result *or error so fundamental as to threaten a defendant's entitlement to due process of law*. Or, as stated differently, a palpable error is where the defect in the proceeding was shocking or jurisprudentially intolerable. Ultimately, manifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the proceeding.

*Young v. Commonwealth*, 426 S.W.3d 577, 584 (Ky. 2014) (internal citations, quotations and alterations omitted) (emphasis added).[23] Palpable error review of this issue is appropriate under our precedent.

The Board's written supervision revocation procedures do not explicitly identify a standard of proof by which the violation must be proved at the final hearing. 501 KAR 1:070 Section 3(5) provides that at the post-incarceration

---

[23] *Young* applied Kentucky Rule of Criminal Procedure (RCr) 10.26. As we noted in *Nami Resources Co., L.L.C. v. Asher Land & Mineral, Ltd.*, 554 S.W.3d 323, 338 (Ky. 2018), the language of CR 61.02 is identical to its criminal law counterpart, RCr 10.26, and we interpret that language identically.

supervision revocation hearing, the Board determines "whether to revoke the offender's" supervision. KYPB 30-02 Section C(4) provides further that the Board shall make a determination of whether to revoke the offender's post-incarceration supervision "due to the violation" of one or more conditions of supervision. Nevertheless, the Parole Board relies on KRS 532.043(5) for its position that it properly applies the "probable cause" standard when it reviews the evidence entered at the preliminary hearing to determine whether to revoke an offender's supervision.

KRS 532.043(5) states:

If a person violates a provision specified in subsection (3) of this section, [which mandates compliance with post-incarceration supervision conditions,] the violation shall be reported in writing by the Division of Probation and Parole. *Notice of the violation shall be sent to the Parole Board to determine whether probable cause exists to revoke the defendant's post-incarceration supervision and reincarcerate the defendant* as set forth in KRS 532.060.

(Emphasis added.)

Because due process requires that the evidentiary final hearing be the basis for more than determining probable cause, *Morrissey*, 408 U.S. at 488, and we presume KRS 532.043(5) is not contrary to any constitutional right, *Cornelison v. Commonwealth*, 52 S.W.3d 570, 572 (Ky. 2001) (citing *Lakes v. Goodloe*, 242 S.W. 632, 635 (Ky. 1922)), we must disagree with the Board's interpretation. In our view, the cited language in KRS 532.043(5) merely refers to the inception of the revocation process — the necessity of determining whether probable cause exists to proceed with the revocation process.

To reiterate, the *Morrissey* Court specifically held that constitutional due process mandates a final revocation hearing which "must be the basis for *more than determining probable cause . . . .*" 408 U.S. at 488 (emphasis added). The decision to revoke post-incarceration supervision involves a retrospective factual inquiry as to whether the probationer *has violated* a condition of supervision. *See id.* at 479. Given that probable cause only requires a belief that a violation *may* have occurred, *Texas v. Brown*, 460 U.S. 730, 742 (1983), it is an insufficiently low standard. The Board's application of the probable cause standard of proof is a fundamental error adverse to an offender's entitlement to due process, justifying RCr 10.26 relief. *See Hunt v. Commonwealth*, 326 S.W.3d 437, 440 (Ky. 2010). Simply put, the Board used an incorrect – unconstitutionally low – standard to revoke Bailey's supervision and that constitutes a manifest injustice.

Notably, the *Morrissey* Court required something "more than" probable cause but never expressly invoked the preponderance standard. 408 U.S. at 488. However, this Court clarified the due process requirements for a probation revocation hearing in *Hunt.* In that case, rather than requiring the Commonwealth to prove its case, the trial court placed the burden on the defendant to show cause why his probation should not be revoked. 326 S.W.3d at 440. The Court of Appeals affirmed the trial court's revocation of Hunt's probation but this Court reversed. Consistent with the Court of Appeals' prior opinions, *Murphy v. Commonwealth*, 551 S.W.2d 838 (Ky. App. 1977), and *Rasdon v. Commonwealth*, 701 S.W.2d 716, 719 (Ky. App. 1986), we

28

concluded *inter alia* that "the standard for revocation of probation is proof, by a preponderance of the evidence, that a violation has occurred." *Id.* at 439. We had actually reached the same conclusion regarding the burden of proof a year earlier in *Commonwealth v. Lopez*, 292 S.W.3d 878, 881 (Ky. 2009).

Minimal constitutional due process requirements are met when the process provides adequate safeguards to the offender confronted by an action against him by the Commonwealth. *Mathews*, 424 U.S. at 348-49. Indisputably, the standard of proof is a primary safeguard. "The function of a standard of proof . . . is to instruct the factfinder concerning the degree of confidence . . . he should have in the correctness of factual conclusions for a particular type of adjudication," indicating "the relative importance attached to the ultimate decision." *Addington v. Texas*, 441 U.S. 418, 423 (1979) (internal quotation marks and citation omitted). Consequently, the more important the decision, the higher the burden of proof. For example, in criminal trials when the interests of the presumed-innocent defendant are of such magnitude to warrant excluding the likelihood of an erroneous judgment to the extent humanly possible, the "beyond a reasonable doubt" standard of proof is employed. *Id.* at 423-24.

Although the parolee's or probationer's (here post-incarceration supervisee's) liberty interest in avoiding incarceration is constitutionally significant, *Morrissey*, 408 U.S. at 480; *Gagnon*, 411 U.S. at 782, the offender's liberty interest is a conditional one and it does not entitle him to the same degree of due process otherwise afforded at the time of criminal trial, *see Hunt*,

326 S.W.3d at 439. "Implicit in the system's concern with [supervision] violations is the notion that the [offender] is entitled to retain his liberty as long as he substantially abides by the conditions of his [supervision]." *Morrissey*, 408 U.S. at 479. The standard of proof must "insure that his liberty is not unjustifiably taken away," *while also serving* the Commonwealth's important interest in not "imprudently prejudicing the safety of the community." *Gagnon*, 411 U.S. at 785. We conclude, as with probation revocation, the standard of proof required to establish a conditional-freedom violation is preponderance of the evidence. The application of the preponderance standard facilitates the required "final evaluation of any contested relevant facts," *Morrissey*, 408 U.S. at 488, and appropriately protects the interests of both the Commonwealth and the offender.

### 3. The Board must consider assistance of counsel requests on a case-by-case basis.

Having concluded that the Board must afford a final evidentiary revocation hearing at which an offender can present evidence and confront witnesses, and the alleged violation(s) must be proven by a preponderance of the evidence, the next issue we confront is whether an offender has a right to counsel at the final revocation hearing.[24] We conclude that the offender must

---

[24] In relation to the assistance of counsel issue in this case, we note that parole regulation 501 KAR 1:040 Section 6 provides that when a special final hearing is granted allowing presentation of new and different information from that presented in the preliminary hearing, the parolee is given a short deferment to allow for the scheduling of the hearing and to secure legal counsel. This provision is not part of post-incarceration supervision regulation 501 KAR 1:070.

Even though 501 KAR 1:040 states the parole revocation special hearing is deferred so that the parolee may secure legal counsel, that provision is not part of

30

be informed of his right to request counsel and pursuant to *Gagnon* the need for counsel must be assessed on a case-by-case basis, with the Parole Board exercising its sound discretion in determining whether the offender has a due process right to counsel. As explained more fully *infra*, we disagree with the Court of Appeals that KRS 31.110 creates a statutory right to counsel at the final revocation hearing.

In *Morrissey*, the Supreme Court did not reach the question "whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." 408 U.S. at 489. To date, the United States Supreme Court has *not* held that one granted conditional freedom is entitled in every case to representation by an attorney at a final revocation hearing. Instead, because a conditional freedom revocation is not a stage of a criminal prosecution to which the Sixth Amendment applies, *see Gagnon*, 411 U.S. at 782, but because it can result in a loss of liberty, the due process required under the Fourteenth Amendment is implicated. In *Gagnon*, the Supreme Court held "the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Id.* at 790.[25] The Court

_____

KYPB 13-02 Section C.(3). KYPB 13-02 Section C(3) notes only the grant of a continuance to schedule the special hearing.

[25] *Turner v. Rogers*, 564 U.S. 431 (2011), is the Supreme Court's most recent case addressing whether one facing incarceration has a due process right to counsel. *Turner* holds "that the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year)." *Id.* at 448 (emphasis in original). *Turner* examines *Gagnon*, 411 U.S. 778, stating "[T]he Court has held that a criminal offender facing revocation of probation and

31

explained that "[a]lthough the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees." *Id.*

The substantive "decision to revoke [conditional freedom] typically involves two distinct components: (1) a retrospective factual question whether the [offender] has violated a condition of [conditional supervision]; and (2) a discretionary determination by the [Parole Board] whether violation of a condition warrants revocation of [supervision]." *Black,* 471 U.S. at 611. The hearing is essentially an accusatory proceeding in which the outcome, continued conditional freedom or imprisonment, is dependent upon the Board's factual determination as to the truth of specific allegations of misconduct.

As described in *Gagnon,* a constitutional right to counsel presumptively arises when the petitioner raises

> a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

411 U.S. at 790.

---

imprisonment does *not* ordinarily have a right to counsel at a probation revocation hearing." *Id.* at 443 (emphasis in original). *Black v. Romano,* 471 U.S. 606, 612 (1985), a probation revocation case, also cites *Gagnon,* 411 U.S. at 790, stating "[T]he probationer has a right to the assistance of counsel in some circumstances."

In *Vitek v. Jones*, 445 U.S. 480, 498 (1980), Justice Powell's concurring opinion succinctly recounted *Gagnon*'s holding as follows:

> We noted that probationers would not always need counsel because in most hearings the essential facts are undisputed. In lieu of a *per se* rule we held that the necessity of providing counsel should be determined on a case-by-case basis. In particular, we stressed that factors governing the decision to provide counsel include (i) the existence of [material] factual disputes or issues which are 'complex or otherwise difficult to develop or present,' and (ii) 'whether the probationer appears to be capable of speaking effectively for himself.'[26]

As described, the Parole Board's exercise of discretion lies primarily with assessing the status of the evidence and judging the ability of the offender to speak "effectively for himself."

The *Gagnon* due process analysis weighed the interests involved: the private interest at stake, the government interest, and the risk that the procedures used will lead to an erroneous decision. *See id* at 790. This procedural due process analysis was formalized in *Mathews v. Eldridge*, 424 U.S. 319, and is now used to determine whether counsel is necessary in cases other than criminal prosecutions. *See Turner v. Rogers*, 564 U.S. 431, 444-45 (2011) (civil contempt hearing for failure to pay child support) and *Lassiter v.*

---

[26] *Gagnon* recognized that "the effectiveness of the rights guaranteed by *Morrissey*, may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess" and in order to enjoy those rights, the offender lacking the necessary skills will be entitled to the assistance of counsel. 411 U.S. at 786-87. "Despite the informal nature of the proceedings and the absence of technical rules of procedure or evidence, the unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence." *Id.*

*Dept. of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 27-31 (1981) (termination of parental rights proceeding). As stated in *Mathews*, 424 U.S. at 335,

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Applying the *Mathews* factors to the determination whether counsel is necessary at a post-incarceration supervision revocation hearing, just as the United States Supreme Court found for conditional-freedom probationers and parolees in *Morrissey* and *Gagnon*, this Court finds that an offender has a substantial interest in his conditional liberty at the time of the final revocation hearing; whether he is to be reincarcerated cannot be determined until the conclusion of that proceeding. This Court also finds that the Commonwealth has a substantial interest in facilitating an offender's reintegration into society while ensuring public safety but also, when an offender willfully disobeys the supervision terms which function to safeguard the public, a substantial interest in ensuring that an offender is not allowed to remain free. As to the fiscal and administrative burdens, the burden of providing counsel is small when compared to the liberty interest at risk here. "To its credit, the General Assembly has created and funded the [Department of Public Advocacy (DPA)], and nothing except legislative parameters precludes that office from providing

legal services to indigent defendants or movants even when not constitutionally required." *Fraser v. Commonwealth*, 59 S.W.3d 448, 456 (Ky. 2001).

Finally, this Court finds that the assistance of counsel would appreciably decrease the risk of an erroneous decision or result when a material factual dispute is present or the offender cannot effectively represent himself. Counsel has a recognized role of gathering and presenting relevant facts — a role which an uncounseled offender may not easily fill. Fundamental fairness mandates the right to counsel when the offender might be expected to encounter difficulty in presenting his version of a disputed set of facts. The Board, making decisions which have such serious impact on the lives of the offenders who appear before it, cannot be permitted to base its determination on a view of the facts that is possibly mistaken due to the offender's inability to make a proper, organized factual presentation. *See Gagnon*, 411 U.S. at 790. If the Parole Board should conclude that the assistance of counsel is not required in any particular case, it should state its reasons so that the issue is preserved for review. *Id.* at 791.

On its face, the present case appears to be somewhat complex. The facts surrounding Bailey's termination from SOTP were disputed and evidence potentially mitigated against his supervision revocation. Bailey likely had a right to be represented by counsel before the Parole Board. *See Gagnon*, 411 U.S. at 789 ("The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from *the peculiarities of particular cases.*") (emphasis added). However, due to the aforementioned

35

mootness of Bailey's specific case, we need not definitively answer the right to counsel question on these particular facts.

### 4. Final hearing notice requirement.

Bailey next claims that he was not provided notice of the time and place of the final revocation hearing, or notice of all the evidence against him, a due process violation. The Board counters that Bailey received notice of the preliminary hearing and had ample opportunity to present any and all evidence at that preliminary hearing. In the Board's view, Bailey's argument that his ability to prepare for the final hearing was impaired by the lack of notice is disingenuous because by the time the final hearing arrived Bailey already knew — via the preliminary hearing — the violation allegations and the evidence in support of these allegations.

Although the *Morrissey* list of final hearing requirements does not explicitly state that the written notice shall include notice of the time, place, and purpose of the hearing,

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted). "The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Mathews*, 424 U.S. at

36

348-49 (internal quotation and citation omitted). In order to prepare meaningfully for the final hearing, an offender must receive notice of the time, place, and nature of the hearing, as well as the evidence against him, and the standard by which the evidence of violation(s) will be judged. We conclude that Bailey's due process rights were violated when he did not receive proper notice of the final revocation hearing consistent with these requirements.

### 5. Statement of reasons for revocation and evidence relied upon.

Bailey additionally claims a due process violation occurred when he did not receive a written statement describing either the evidence relied upon or the reason for revoking his supervision. The Board does not dispute that Bailey received a summary decision.[27]

One element of due process identified in *Morrissey*, 408 U.S. at 488-89, is the provision to the offender of "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole [or probation]." As noted earlier, a regulation and a procedure, 501 KAR 1:070 and KYPB 30-02 Section C(4)(a), already address the Board's written decision requirement. 501 KAR 1:070 Section 3(5)(a) provides that the offender shall be given written notification of the Board's decision within twenty-one (21) days from the date of decision. KYPB 30-02 Section C(4)(a) provides that the written determination shall provide a brief statement identifying the reasons for the determination

---

[27] The Board's written decision is not part of the record.

and evidence relied upon. Based upon Bailey's unrefuted allegations, the Board violated Bailey's due process rights when it did not follow these procedures. The Board must comply with 501 KAR 1:070 Section 3(5)(a) and KYPB 30-02 Section C(4)(a) in order to meet its due process obligations.

### 6. Board's consideration of DOC records.

KYPB 30-02 Section C(2)(a) states that at the final hearing "[t]he evidence shall be limited to the administrative record made before the Administrative Law Judge, except that: [t]he Board, in its discretion, may consider any records provided by the Department of Corrections pursuant to KRS 439.320(1), 439.340, or 439.380 regarding the offender's crimes, conduct, imprisonment or supervision." Citing *United States, ex rel Carson v. Taylor*, 540 F.2d 1156, 1163 (2d Cir. 1976), Bailey asserts that since there is no requirement that the Board disclose when it is exercising this prerogative, this procedure violates the due process principle that an individual has a right to be made aware of the evidence against him. This issue is not preserved so Bailey again requests CR 61.02 palpable error review.

We find nothing in the record which suggests that this rule was employed in the Board's decision to revoke Bailey's supervision. Bailey appears to be assuming that the Board will not disclose its use of records provided by the Department of Corrections. As the alleged error is not easily perceptible, plain, obvious and readily noticeable, it does not meet the first criteria under CR 61.02, *Gaither v. Commonwealth*, 521 S.W.3d 199, 205 (Ky. 2017), and we deny palpable error review.

38

## III. KRS 31.110 DOES NOT PROVIDE A RIGHT TO COUNSEL AT THE FINAL REVOCATION HEARING

Finally, we turn to the Board's cross-appeal of the Court of Appeals' decision that KRS 31.110(2)(a) provides an offender such as Bailey a right to counsel at the final revocation hearing.[28] We conclude the Court of Appeals erred in reaching this conclusion.

Although *Gagnon*, 411 U.S. at 790, makes clear that the offender has the right to be represented by counsel if the case involves significant issues of either guilt or mitigation, the Court of Appeals deemed the preliminary revocation hearing an adequate evidentiary hearing where Bailey was represented by counsel and mitigation witnesses testified on his behalf. Thus the appellate panel did not find a due process violation. Rather than finding that due process will at times afford an offender a right to counsel at the final revocation hearing, the Court of Appeals reasoned (1) that Kentucky regulations do not require counsel in final revocation hearings; (2) that, nevertheless, the final hearing is a critical stage of the revocation process;[29] and (3) that KRS 31.110(2)(a) provides a statutory right to counsel at parole revocation hearings, a right that also extends to post-incarceration supervision

---

[28] The Court of Appeals' opinion notes that this decision is consistent with two earlier unpublished opinions, *Warick v. Kentucky Parole Board*, 2007 WL 2142277 (Ky. App. July 27, 2007), and *Dodd v. Coy*, 2005 WL 119863 (Ky. App. Jan. 21, 2005).

[29] Although we do not disagree that the final revocation hearing is a critical stage of the revocation process, as discussed earlier, the revocation hearing is not a critical stage of a criminal prosecution. To the extent the Court of Appeals cites *Tigue v. Commonwealth*, 459 S.W.3d 372, 383 (Ky. 2015), for the premise that the revocation hearing is a critical stage of the criminal prosecution, the citation is misplaced.

revocation hearings. We agree with the Parole Board that KRS 31.110 does not create a statutory right to counsel in post-incarceration supervision hearings. Instead, KRS 31.110 creates a statutory right to be represented by counsel assigned by the Department of Public Advocacy (DPA) when a needy or indigent offender meets the criteria outlined in the chapter. KRS Chapter 31 defines a "needy or indigent" person, identifies when DPA counsel may be appointed, and prescribes procedures for determining a defendant's obligation to pay for the representation.

The Department of Public Advocacy was established, pertinently, "in order to provide for the establishment, maintenance, and operation of a state-sponsored and controlled system for . . . [t]he representation of indigent persons accused of crimes or mental states which may result in their incarceration or confinement." KRS 31.010(1). KRS 31.110 is entitled "Persons entitled to department representation and services; extent of representation and services." Pertinently, it provides:

> (1) *A needy person* who is being detained by a law enforcement officer, on suspicion of having committed, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, or who is accused of having committed a public or status offense . . . is entitled:
> (a) To be represented by an attorney to the same extent as a person having his or her own counsel is so entitled; and
> (b) Except as provided in subsection (2)(c) of this section, to be provided with the necessary services and facilities of representation, including investigation and other preparation. The courts in which the defendant is tried shall waive all costs.

> (2) A needy person who is entitled to be represented by an attorney under subsection (1) of this section is entitled:
> (a) *To be counseled and defended at all stages of the matter*

40

> *beginning with the earliest time when a person providing his or her own counsel would be entitled to be represented*
> *by an attorney and including revocation of probation or parole;*
>
> (b) To be represented in any appeal; and
> (c) To be represented in any other post-conviction [proceeding], . . . including any appeal from a post-conviction . . . action. However, if the department and the court of competent jurisdiction determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his or her own expense, *there shall be no further right to be represented by counsel under the provisions of this chapter. . . .*

(Emphasis added.)

"The [Department] of Public Advocacy is, in fine, an agency of the executive branch of the State government . . . ." *Ex parte Farley*, 570 S.W.2d 617, 620 (Ky. 1978). "[T]he 1972 General Assembly enacted KRS Chapter 31, establishing and funding the Department of Public Advocacy ("DPA") for the purpose of providing legal counsel for indigent criminal defendants. *Fraser*, 59 S.W.3d at 454. "[KRS Chapter 31] sets up a scheme whereby the executive duty of providing effective counsel for indigents can be met through various plans." *Pillersdorf v. Dept. of Public Advocacy*, 890 S.W.2d 616, 619 (Ky. 1994). "Under the Act, DPA is charged with the duty to ensure that services are provided to indigents in all 120 counties of the Commonwealth." *Id.* at 620 (citations omitted).

KRS 31.030 provides in pertinent part that the authority and duties of the Department of Public Advocacy include but are not limited to:

41

(1) Administering the statewide public advocacy system created by this chapter or by any other appropriate legislation or court decision;

. . . .

(4) Developing and promulgating standards and administrative regulations, rules, and procedures *for administration of the defense of indigent defendants in criminal cases that the public advocate, statutes, or the courts determine are subject to public assistance*;

. . . .

(9) Issuing rules, promulgating administrative regulations, and establishing standards as may be reasonably necessary to carry out the provisions of this chapter, the decisions of the United States Supreme Court, the decisions of the Kentucky Supreme Court, Court of Appeals, and other applicable court decisions or statutes;

. . . .

13) *Being authorized to assign an attorney*, including a conflict attorney under a plan, for good cause, *at any stage of representation*, including trial, appeal, or other post-conviction or post-disposition proceeding, *including* discharge revocation hearings, *preliminary parole revocation hearings*, and conditional discharge revocation hearings, regardless of whether the hearings are conducted by constitutional judges or executive branch administrative law judges;

. . . .

(Emphasis added.)

The Court of Appeals emphasized that KRS 31.110(2)(a) explicitly requires needy persons to receive counsel "*at all stages of the matter* beginning with the earliest time when a person providing his or her own counsel would be entitled to be represented by an attorney and including revocation of probation or parole." The appellate court also held that the specific reference in KRS 31.030(13) to the DPA's authority to assign an attorney for post-conviction proceedings, "including . . . preliminary parole revocation hearings," cannot be read to limit counsel's availability to preliminary revocation hearings.

42

The Parole Board maintains that the Court of Appeals mistakenly turned DPA's statutory authorization to appoint attorneys to represent indigent persons in specific proceedings, along with the statutory right of those needy individuals to seek assistance from DPA, into a blanket statutory right to counsel in final revocation hearings before the Parole Board. Bailey agrees that the KRS Chapter 31 was not written to trace the contours of the right to counsel, but insists it was designed to ensure that when an individual's liberty is at stake, his right to counsel is not determined by his financial situation. Bailey cites *Lewis v. Lewis*, 875 S.W.2d 862 (Ky. 1993), and *Fraser*, 59 S.W.3d 448, as cases in which this Court found KRS 31.110 provides a statutory right to counsel. In our view, these cases are perhaps better understood as acknowledging that a procedural due process right to counsel potentially exists when a liberty interest is at stake, and once that right is determined, the DPA, pursuant to statute, may assign an attorney to represent the needy or indigent defendant.

In *Lewis*, the defendants appeared in court to show cause why they should not be held in contempt for failure to pay accrued child support. The defendants appeared without counsel, and the trial court did not advise them of the right to counsel, or determine whether they were indigent and qualified for appointed counsel. The defendants were ordered incarcerated until payment of the debt. 875 S.W.2d at 863. *Lewis* thus presented the question whether an indigent defendant in a civil contempt proceeding has a right to appointed counsel under the Fourteenth Amendment when a trial court

43

considers incarceration as a penalty.[30] This Court stated that the issue need not be reached because pursuant to KRS Chapter 31, Kentucky law provides that an indigent person has a right to appointed counsel in civil contempt proceedings before the trial court may order incarceration. *Id.* at 863-64. *Lewis* first analyzed KRS 31.110 and concluded because the defendants were not provided the opportunity to present an affidavit of indigency, they were denied the opportunity to receive that to which they were entitled – state-appointed counsel's representation for a serious crime which could result in detainment. *Id.* at 864. The Court cited *Argersinger v. Hamlin*, 407 U.S. 25 (1972), a Sixth Amendment right to counsel case, for the proposition that no person may be imprisoned for any offense unless represented by counsel. *Id.* at 865. Ultimately, the *Lewis* Court found that incarceration for failure to pay child support is a situation for which KRS 31.100(4)(c) (the section defining "serious crime" to include "any legal action which could result in the detainment of a defendant") calls for the appointment of counsel for the indigent. *Id.*

*Commonwealth v. Ivey*, 599 S.W.2d 456 (Ky. 1980), which preceded and laid the groundwork for *Fraser,* presented the question of whether KRS 31.110 requires the appointment of counsel when a needy person requests such appointment in RCr 11.42 proceedings. Although the circuit court ruled in

---

[30] The United States Supreme Court later held in *Turner v. Rogers*, 564 U.S. at 28, that due process does not automatically require counsel in those circumstances, even if the individual faced incarceration for up to a year.

that case that appointment of counsel was unnecessary under RCr 11.42(5) since the pleading did not raise a material issue of fact, *Ivey* concluded that it was error for the circuit court to deny the appointment, citing the KRS 31.110 requirement to provide counsel for needy persons in post-conviction proceedings upon request. *Id.* at 457. Interpreting the KRS 31.110 counsel-appointment requirement, *Ivey* stated,

> The provision for appointment of counsel found in RCr 11.42(5) was intended to set the minimum standard for post-conviction relief proceedings. The legislature could and did provide for a more generous policy of appointing counsel for indigents, an action which is entirely consistent with its control of the purse strings of the Commonwealth.

*Id.* Deeming "KRS 31.110 and RCr 11.42 . . . complementary," the Court upheld the trial court's ruling that appointment of counsel was not required under RCr 11.42, but also concluded appointment was required by KRS 31.110 to assist the defendant in presenting supplementary grounds for RCr 11.42 relief. *Id.* at 458.

Following two intervening cases addressing the application of KRS 31.110 in RCr 11.42 proceedings, *Gilliam v. Commonwealth,* 652 S.W.2d 856 (Ky. 1983), and *Commonwealth v. Stamps,* 672 S.W.2d 336 (Ky. 1984), *Fraser,* upon discretionary review, again confronted the question of when an indigent defendant is entitled to appointment of counsel to assist him in pursuing an RCr 11.42 motion. *Fraser* overruled *Ivey.*

In *Fraser* the trial court denied the defendant's motion for an RCr 11.42 evidentiary hearing and appointment of counsel, and the Court of Appeals

45

affirmed. *Fraser* considered *Gilliam*'s "retreat from the broad language in *Ivey* that KRS 31.110 requires appointment of counsel and the provision of services 'upon request,'" and *Stamps*' analysis that it is incongruous to give the KRS 31.110 mandated procedure in a criminal case a broader interpretation requiring appointment of counsel "upon request" for an RCr 11.42 proceeding when the language of the RCr 11.42(5) explicitly limits appointment of counsel to cases when "the answer raises a material issue of fact that cannot be determined on the face of the record." 59 S.W.3d at 455. Ultimately, *Fraser* overruled *Ivey* to the extent it holds that KRS 31.110(2)(c) establishes when a judge must appoint counsel for an indigent defendant. *Id.* at 456. *Fraser* also clarifies and corrects the "right to counsel" analysis, applicable to the case before us:

> Like the right to trial by jury and the right of confrontation, the constitutional right to counsel is a matter of procedural due process, *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), not substantive criminal law. *The responsibility for determining when and whether counsel must be appointed for a criminal defendant in Kentucky is a function of the judicial department, not the legislature.* Ky. Const. § 116; *see* RCr 3.05(2). To its credit, the General Assembly has created and funded the DPA, and nothing except legislative parameters precludes that office from providing legal services to indigent defendants or movants even when not constitutionally required. We conclude, therefore, that RCr 11.42(5) establishes when a judge *must* appoint counsel for an indigent movant and that KRS 31.110(2)(c) establishes when the DPA *may* provide legal services even without judicial appointment. . . . Since the statute is broader than the rule, we can conceive of no situation where the judge would appoint counsel for an indigent RCr 11.42 movant who would be statutorily ineligible for representation by the DPA.

*Id.* at 455-56 (internal footnote omitted, emphasis added).

46

Applying *Fraser*'s persuasive analysis, we must conclude that KRS 31.110 does not serve as a basis for a "right to counsel." Instead, as reflected in the title of KRS Chapter 31, in KRS 31.030, in KRS 31.110, and as argued by the Parole Board, the purpose of KRS 31.110 is not to identify when a defendant has a right to counsel at a particular proceeding, but rather when a qualified defendant is entitled to the DPA's services. Consequently, while we do not necessarily disagree with the Court of Appeals that KRS 31.030(13) does not mandate denial of counsel at a final revocation hearing,[31] we cannot find that KRS Chapter 31 creates a statutory right to counsel in the first place. As explained *supra*, an offender's right to counsel at a final revocation hearing arises from due process guarantees and must be decided on a case-by-case basis by the Parole Board, with counsel required in some cases but not others.

## CONCLUSION

The Parole Board's current conditional-freedom final revocation hearing procedures for post-incarceration supervisees violate an offender's due process rights. The offender has a due process right to: an evidentiary final hearing at which he can present evidence and confront witnesses; request assistance of counsel, the need for which the Board must decide on a case-by-case basis; a disposition based upon the preponderance of the evidence; timely notice of the

---

[31] The Board argued that this section which authorizes assignment of DPA counsel limits attorney representation to the preliminary revocation hearing because, by not mentioning final revocation hearings, the legislature expressed its intent that counsel not be available at that later stage. We cannot agree with that interpretation. The section broadly refers to "any stage of representation" and then by using the word "including" offers some specific examples. It does not preclude counsel at a final revocation hearing.

time and place of the hearing and evidence against him; and a timely written decision stating the basis for any revocation. Having concluded that Bailey's due process rights were violated, but that KRS 31.110 does not provide an offender a statutory right to counsel at a final revocation hearing, we affirm the Court of Appeals' reversal of the circuit court's order of dismissal but reverse the appellate court's holdings regarding due process requirements and KRS 31.110. Due to the mootness of Bailey's own claims, it is unnecessary to remand this case to the Franklin Circuit Court.

C.J., Minton; Buckingham, Keller, VanMeter, and Wright, JJ., concur. Wright, J., files a separate concurring opinion, in which Keller, J., joins. Lambert, J., recused.

WRIGHT, J., CONCURRING: I fully concur with Justice Hughes's well-reasoned opinion; however, I write separately to express a concern. While I acknowledge it was not raised before the Court in this case, it is troubling that offenders may be kicked out of the Sex Offender Treatment Program—and required to serve up to an additional five years' imprisonment—for failing to "accept responsibility" for their sexual convictions. Specifically, Provision #1 of the treatment contract provides, in pertinent part: "participants must accept total responsibility for all sexual convictions. . . . Participants who consistently/categorically decline to accept ownership . . . may be terminated from treatment." Here, Bailey did not plead guilty at trial. Rather, he maintained his innocence throughout and was convicted. How can we constitutionally require someone to choose between admitting to a crime and

going back to prison?  This amounts to a five-year sentence for remaining silent.  These, however, are not the grounds for Bailey's appeal.  Keller, J., joins.

COUNSEL FOR APPELLANTS/CROSS-APPELLEES:

Angela Turner Dunham
Justice and Public Safety Cabinet
Office of Legal Services

COUNSEL FOR APPELLEE/CROSS-APPELLANT:

Timothy G. Arnold
Director, Post Trial Division
Department of Public Advocacy