RENDERED:  DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0308-MR

NOAH ADAMS          APPELLANT

v.
APPEAL FROM BOYLE CIRCUIT COURT
HONORABLE JEFF L. DOTSON, JUDGE
ACTION NO. 22-CI-00309

KENTUCKY PAROLE BOARD;
CHARECE BROWN IN HER
CAPACITY AS SUPERVISOR
DISTRICT 6 PROBATION AND
PAROLE; KENTUCKY DIVISION OF
PROBATION AND PAROLE; AND
PAXTON WHITTAKER IN HIS
CAPACITY AS PAROLE OFFICER          APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, DIXON,[1] AND EASTON, JUDGES.

---

[1] Judge Donna Dixon dissented in the Opinion prior to her retirement effective November 20, 2023.  Release of this Opinion was delayed by administrative handling.

CALDWELL, JUDGE:  Appellant Noah Adams (Adams) appeals from the Boyle

Circuit Court's dismissal of his action against the Kentucky Parole Board seeking

declaratory and injunctive relief.  Adams sought the circuit court's review of the

Kentucky Parole Board's revocation of his supervised release.  Finding it was error

to have dismissed all his claims, we reverse the circuit court and remand this

matter for proceedings consistent with this Opinion and an Opinion pending from

the Kentucky Supreme Court.

## FACTS

In 2018, Adams entered guilty pleas to three counts of sexual abuse in

the first degree.  The victim was his seven-year-old adopted sister.  Adams himself

was an adoptee.  He was adopted by Andra Adams when he was three years old.

She testified at the final hearing that Adams was the product of incest, and both of

his biological parents were intellectually disabled.  Adams had been enrolled in

special education classes and was determined to have an IQ of 70[2] and was

therefore intellectually disabled.

Adams was paroled in January of 2020 and was placed on

---

[2] Kentucky Revised Statute (KRS) 532.130(2):  "A defendant with significant subaverage intellectual functioning existing concurrently with substantial deficits in adaptive behavior and manifested during the developmental period is referred to in KRS 532.135 and 532.140 as a defendant with a serious intellectual disability.  'Significantly subaverage general intellectual functioning' is defined as an intelligence quotient (I.Q.) of seventy (70) or below."

Sex Offender Post-Incarceration Supervision (SOPS) in accordance with the law.[3]

Adams had difficulty attending and completing components of the required sexual

---

[3] (1) In addition to the penalties authorized by law, any person convicted of, pleading guilty to, or entering an Alford plea to a felony offense under KRS Chapter 510, 529.100 involving commercial sexual activity, 530.020, 530.064(1)(a), 531.310, or 531.320 shall be subject to a period of postincarceration supervision following release from:

 (a) Incarceration upon expiration of sentence; or

 (b) Completion of parole.

(2) The period of postincarceration supervision shall be five (5) years.

(3) During the period of postincarceration supervision, the defendant shall:

 (a) Be subject to all orders specified by the Department of Corrections; and

 (b) Comply with all education, treatment, testing, or combination thereof required by the Department of Corrections.

(4) Persons under postincarceration supervision pursuant to this section shall be subject to the supervision of the Division of Probation and Parole and under the authority of the Parole Board.

(5) If a person violates a provision specified in subsection (3) of this section, the violation shall be reported in writing by the Division of Probation and Parole. Notice of the violation shall be sent to the Parole Board to determine whether probable cause exists to revoke the defendant's postincarceration supervision and reincarcerate the defendant as set forth in KRS 532.060.

(6) The provisions of this section shall apply only to persons convicted, pleading guilty, or entering an Alford plea after July 15, 1998.

KRS 532.043, *declared unconstitutional on ex post facto application in Roach v. Commonwealth*, 553 S.W.3d 791 (Ky. 2018).

offender treatment program (SOTP) and was ultimately removed from the program in April of 2022. Completion of the program was a condition of his continued release on SOPS.

Adams was also alleged to have violated some of the other conditions of supervision. In addition to general requirements such as contacting his parole officer regularly and keeping curfew, Adams was required to meet extra conditions due to his status as a sex offender. Among those conditions and aside from completing SOTP, he was prohibited from possessing sexual devices, having contact with his victim, viewing images of his victim, and was directed to report any incidental contact with his victim or any minor to his parole officer. He was notified in April of 2022 that he was alleged to have violated each of those conditions, along with having provided false information to his parole officer and it was to be determined whether his SOPS should be revoked.

A probable cause hearing was held before a hearing officer on May 4, 2022. Adams was represented by counsel provided by the Department of Public Advocacy. The parole officer and Adams' adoptive mother both provided testimony. The hearing officer found probable cause on several grounds[4] and referred the matter for a final revocation hearing.

---

[4] The hearing officer did not find probable cause to support the allegation Adams gave his parole officer false information. The cited reason for the lack of probable cause was Adams' diminished capacity.

At the final revocation hearing held on May 25, 2022, Adams was again represented by counsel. Adams' parole officer provided testimony concerning the alleged violations of supervision but also testified he believed Adams was a good candidate for graduated sanctions and could be managed in the community on continued supervision. Adams' adoptive mother provided mitigation testimony. She explained Adams was the result of familial rape and both of his parents had diminished capacity due to intellectual disabilities. Adams was removed from his mother at birth and placed in foster care. Ms. Adams was not the first placement for Adams and his brother, Justin. She testified she had adopted both boys and Justin had passed away about six (6) years prior. Adams had a difficult time with the loss of his brother. She explained due to his low IQ, Adams often has difficulty understanding oral and written instructions and needs instructions to be repeated and broken down into discrete steps.

Following the hearing and based on preponderance of the evidence, the hearing officer found Adams had committed the alleged violations. The Parole Board issued its final written decision revoking Adams' supervision and requiring him to serve out the remainder of the term in a Department of Corrections facility on June 9, 2022.[5]

---

[5] Adams will serve out the term on January 19, 2025.

Adams, through counsel, filed a complaint seeking declaratory and injunctive relief in the Boyle Circuit Court.[6] He alleged his rights to due process were violated when:

(1) his right to confrontation was denied during the revocation proceedings, when he was not provided with accommodations due to his disability;

(2) when the Board failed to meet the standards in KRS 439.3106;

(3) when the Board failed to indicate whether it considered mitigating evidence;

(4) when the Board did not preside over the hearing, but relied upon the record developed by hearing officers;

---

[6] At the time the complaint was filed, Adams was housed in the Boyle County Detention Center. He resided in Danville with his mother before his arrest. Prior to 2021, judicial review of decisions of the Kentucky Parole Board would find venue in Franklin Circuit Court, where the offices of the Board are located. However, in 2021, the General Assembly passed HB 3, and overrode a veto of the legislation. This new legislation was described by the Kentucky Supreme Court as follows:

> Among other things, this new section provided that the venue for any civil suit challenging the constitutionality of a Kentucky statute, executive order, administrative regulation, or order of any cabinet that includes a claim for declaratory or injunctive relief and is brought against a state official in his or her official capacity is in any county where a plaintiff in the suit resides.
>
> This marked a significant change, as prior to the passage of H.B. 3, suits of this type were typically required to be brought in Franklin Circuit Court.

*Beshear v. Goodwood Brewing Company, LLC*, 635 S.W.3d 788, 794 (Ky. 2021), *reh'g denied* (Dec. 16, 2021).

(5) when the Board acted arbitrarily in determining he must serve out his term in custody;

(6) when the Board determined he was a risk to victims or the community and could not be managed within the community without sufficient evidence;

(7) and when the Board failed to impose a graduated sanction.

The defendants filed a motion to dismiss. The Boyle Circuit Court granted the motion and dismissed the action. Adams timely filed this appeal.

**STANDARD OF REVIEW**

Although the defendants sought dismissal of Adams' suit for declaratory judgment[7] and the order of the Boyle Circuit Court indicated it was granting dismissal, the review required is more akin to the review of a grant of summary judgment.

> Where, as here, principles of administrative law
> and appellate procedure bear upon the court's decision,

---

[7] A petition for declaratory judgment pursuant to KRS 418.040 has become the vehicle, whenever Habeas Corpus proceedings are inappropriate, whereby inmates may seek review of their disputes with the Corrections Department. *Polsgrove v. Kentucky Bureau of Corrections*, Ky., 559 S.W.2d 736 (1977); [*Graham v. O'Dea*, 876 S.W.2d 621 (Ky. App. 1994)]. While technically original actions, these inmate petitions share many of the aspects of appeals. They invoke the circuit court's authority to act as a court of review. The court seeks not to form its own judgment, but, with due deference, to ensure that the agency's judgment comports with the legal restrictions applicable to it. *American Beauty Homes Corp. v. Louisville & Jefferson County Planning and Zoning Comm'n*, Ky., 379 S.W.2d 450 (1964).

*Smith v. O'Dea*, 939 S.W.2d 353, 355 (Ky. App. 1997).

the usual summary judgment analysis must be qualified. The problem is to reconcile the requirement under the general summary judgment standard to view as favorably to the non-moving party as is reasonably possible the facts and any inferences drawn therefrom, with a reviewing court's duty to acknowledge an agency's discretionary authority, its expertise, and its superior access to evidence. In these circumstances we believe summary judgment for the Corrections Department is proper if and only if the inmate's petition and any supporting materials, construed in light of the entire agency record (including, if submitted, administrators' affidavits describing the context of their acts or decisions), does not raise specific, genuine issues of material fact sufficient to overcome the presumption of agency propriety, and the Department is entitled to judgment as a matter of law.

*Smith*, 939 S.W.2d at 355-56.

The review of the entry or denial of summary judgment by a court from an administrative action requires suitable deference be given to the agency due to its expertise in the subject matter. Nevertheless, if there are genuine issues of material fact which call into question the presumption of propriety of the agency's action, summary judgment should not be entered. Summary judgment is only proper "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (citing *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985)). "The record must be viewed in a light

most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Id.* at 480.

## ANALYSIS

Our review is limited to whether the Boyle Circuit Court appropriately dismissed the action in favor of the Kentucky Parole Board. To do so, as previously indicated, we must find there were no genuine issues of material fact in dispute and the Parole Board was therefore entitled to judgment as a matter of law.

Persons on supervision are entitled to certain due process. In *Jones v. Bailey*, the Kentucky Supreme Court laid out the minimum due process required in revocation proceedings: (a) written notice of the claimed violations; (b) disclosure of evidence against him; (c) opportunity to be heard and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses; (e) a "neutral and detached" hearing body; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. 576 S.W.3d 128, 156 (Ky. 2019).

First, Adams alleges the Board violated his rights to due process when the hearing officer who presided over the probable cause hearing considered the results of a polygraph examination during the preliminary revocation procedures.

Apparently,[8] during his testimony the parole officer read from the polygraph report generated by the agency which was providing SOTP programming to Adams. It appears Adams denied having had any contact with the victim of his crime during the examination but admitted to such contact during the post-examination interview.

Polygraph examinations are not admissible in Kentucky courts.[9] In the present instance, it appears the parole officer read from a written termination form during the probable cause hearing.[10] In the termination form, which was completed by the social service agency providing the program, it was mentioned that a polygraph was administered to determine if Adams had any contact with his victim. Adams' denial of such contact during the administration of the polygraph examination was deemed "indicative" of deception.

Adams alleges this mention of the polygraph examination violated his rights to confrontation. His conclusory argument alleges by admitting the testimony, the hearing officer improperly considered the evidence. However, the

---

[8] The record before us does not include recordings of the hearings held before the hearing officers.

[9] The results of a polygraph or lie detector test are not admissible in evidence in Kentucky. *Perry v. Commonwealth, ex rel. Kessinger*, 652 S.W.2d 655, 662 (Ky. 1983) (citing *Stallings v. Commonwealth*, 556 S.W.2d 4 (Ky. 1977)).

[10] This form is in the record on appeal, as an attachment to the complaint filed by Adams.

hearing officer specifically found because of Adams' intellectual disability, she was finding *no probable cause* on the charge of providing false information. While the hearing officer did find Adams violated the terms of his release by having contact with the victim, she based her finding on other evidence and Adams' failure to report the incidental contact to his parole officer, as the terms of his release required.

It must be remembered Adams was discharged from the sex offender treatment program for multiple reasons, and alleged contact with his victim was only one of those reasons. In the letter sent to Adams notifying him of his termination from the sex offender treatment program these reasons are listed:

1) Excessive unexcused absences;

2) Persistent lateness;

3) Seeking out sexually explicit materials on Netflix on several occasions;

4) Exhibiting high-risk pre-offense behaviors.

Even if the incidental contact with his victim is not considered, there remained ample reasons for Adams' termination from the sex offender treatment program, a requirement of his continued release. We find summary judgment was not inappropriate on this claim.

Adams next complains his rights under the Americans with Disabilities Act (ADA)[11] were violated when his mother was not considered an "auxiliary aid"[12] and provided the terms of his release so she could help him remain compliant. However, the time to have made such complaint was before the Parole Board, not before the circuit court. Adams does not complain his due process rights before the Board were violated, and thus we find he waived any argument concerning the ADA by not raising such allegation during the hearings held prior to his revocation. "The failure to raise an issue before an administrative body precludes a litigant from asserting that issue in an action for judicial review of the agency's action. *See Personnel Board v. Heck*, [725 S.W.2d 13 (Ky. App. 1986)]." *O'Dea v. Clark*, 883 S.W.2d 888, 892 (Ky. App. 1994).

Adams also complains the Parole Board was remiss in not providing accommodations during the revocation process but does not allege he ever requested any accommodations, despite being represented by counsel during the revocation process. In *Cabinet for Health and Family Services v. K.S.*, our Supreme Court determined a parent involved in termination proceedings must forward a request for accommodations of an intellectual disability in a timely manner and cannot forward such claim for the first time at an ultimate proceeding.

---

[11] 42 United States Code Annotated § 12132 *et seq.*

[12] *See* 28 Code of Federal Regulations § 36.303.

585 S.W.3d 202 (Ky. 2019). In so determining, the Court employed the analysis of

the Michigan Court of Appeals which had faced a similar claim:

> In *[In re] Terry*[, 610 N.W.2d 563 (Mich. Ct. App. 2000)] the mother contended, as does the dissent herein, that she was not offered appropriate services in light of her disability, which constituted a violation of the ADA. The appellate court in *Terry* held that "[a]ny claim that the state agency was violating the ADA "must be raised in a timely manner, however, so that reasonable accommodations can be made." *Id.* at 570. The court further held that if the parent believed the agency was "unreasonably refusing to accommodate a disability, the parent should claim a violation of her rights under the ADA, either when a service plan is adopted or soon afterward." *Id.* Because the mother in that case did not raise a challenge to the nature of the services until the closing argument at the termination hearing, the appellate court held that it was "too late in the proceedings to raise the issue." *Id.* at 570-71.

> In this case there is no indication that prior to the termination hearing K.S. (or her attorney) raised the issue that she had not been provided appropriate services as they relate to her disability. We conclude that because K.S. did not raise a challenge to the services that were being provided to her at the time, the issue has been waived for our review.

585 S.W.3d at 215-16.

We find Adams did not raise the issues concerning whether his rights

were violated by the failure of either the Department of Corrections or the

Kentucky Parole Board to accommodate his disability under the ADA in a timely

fashion, precluding the review of this Court under *K.S.*, *supra.*

Next, Adams alleges the Board erred when it failed to expressly find Adams constituted "a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community[.]" KRS 439.3106(1)(a). He claims the use of a checkbox on a form is insufficient evidence of what facts the Board found rendered Adams a significant risk and not manageable in the community.

The Board is subject to KRS 439.3106.[13] Thus, its determination must indicate sanctions other than revocation were considered and determined inappropriate. The Board provided a long recitation of the facts which led to its decision. Most particularly, the Board stated "[G]iven Mr. Adams' conduct while on supervision, the Board finds he cannot be managed on supervision and poses a significant risk to the community." We find this sufficient.

We do note Adams' parole officer testified he believed Adams was not a significant risk to his victim or the community and he could be managed in the community. However, the Board is not beholden to the opinion of the parole officer. "The rule in Kentucky is that if there is substantial evidence in the record

---

[13] "Since KRS 439.3106 makes no distinction between probation or parole, this Court finds as a matter of law that the requirements of KRS 439.3106 must apply to the Board as well as to the courts. The Board's failure to make express findings on the record, oral or otherwise, demonstrating that the Board considered the requirements of KRS 439.3106, before their final revocation of Murrell's parole, is a fatal flaw." *Murrell v. Kentucky Parole Board*, 531 S.W.3d 503, 507 (Ky. App. 2017).

to support an agency's findings, the findings will be upheld, even though there may be conflicting evidence in the record." *Kentucky Comm'n on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981). The Parole Board noted its consideration of KRS 439.3106 and made the statutorily required findings.

We are not holding that in every instance the use of a checkbox on a pre-printed form would satisfy the requirements of KRS 439.3106. But we find in this instance the Board listed, with sufficient particularity, the facts it relied upon in making its determination and specifically found those facts which led to its conclusion Adams was a risk to the community and could not be appropriately managed on release.

Adams also complains the Board's final determination does not support a conclusion they considered mitigating evidence. The Board is required to consider evidence presented by the supervisee in mitigation of revocation.

> [The final revocation] hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The [offender] must have [a timely] opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation.

*Jones v. Bailey*, 576 S.W.3d 128, 137-38 (Ky. 2019) (citing *Morrissey*, *infra*, 408 U.S. at 488, 92 S. Ct. at 2603.)

The record belies Adams' claim as the Board specifically mentioned the testimony of Adams' adoptive mother, Andra Adams, and the arguments of his counsel at the final hearing as mitigating evidence which it considered. Even after such consideration, though, the Board concluded Adams' conduct while on supervision indicated he could not be appropriately managed in the community, and he posed a significant risk to the community.

While we might agree with Adams there were facts in his case which would invite mitigation and the imposition of a result less drastic than revocation, we cannot substitute our opinion for the opinion of the Board. *See Murrell*, 531 S.W.3d at 506 ("This Court will not normally reverse the decisions of the Board absent a clear mistake in the law. We review to determine [whether] 'the agency's judgment comports with the legal restrictions applicable to it.' *Smith*, 939 S.W.2d at 355 (citing *American Beauty Homes Corp. v. Louisville & Jefferson County Planning and Zoning Comm'n*, 379 S.W.2d 450 (Ky. 1964))."). We therefore find no support for this allegation of error.

Finally, Adams alleges he was not granted the required process when the Board did not itself hold the final hearing, instead allowing it to be conducted by a hearing officer. Citing the requirement in *Jones* requiring that the Board must have "full awareness of all the evidence presented[,]" Adams argues since the Board did not conduct his hearing, it is a matter of disputed fact as to whether the

Board reviewed all the evidence adduced at the final hearing. 576 S.W.3d at 144. Supporting this argument is his allegation the chair of the Board told a conference of criminal defense attorneys the Board often does not review the entire video of the hearings conducted by hearing officers.[14] This constitutes a disputed material fact.

The Board answers the use of hearing officers is expressly provided for in KRS 439.341. Adams disagrees and argues the statute provides hearing officers may be used to conduct "probable cause revocation hearings" and does not expressly provide for the use of hearing officers to conduct the final hearing. The Board argues the last sentence of the statute, which provides hearing officers "shall perform the aforementioned duties and any others assigned by the board[,]" is sufficient to provide statutory authority for the Board to rely upon final hearings conducted by hearing officers.

In *Morrissey v. Brewer*, the United States Supreme Court held due process requires a preliminary hearing before an uninterested party who determines whether probable cause has been established to proceed with the revocation. 408 U.S. 471, 485, 92 S. Ct. 2593, 2602, 33 L. Ed. 2d 484 (1972). Following the

---

[14] In the complaint, Adams alleged Board chair LaDeidra N. Jones stated during a presentation at the Department of Public Advocacy Annual Conference on June 14, 2022, that "members of the Kentucky Parole Board do not review the entire final revocation hearing recorded by the [Administrative Law Judge] ALJ. She stated they base their decision entirely on the written findings produced by the ALJ, which often do not contain all of the mitigation presented by the parolees." Complaint, page 18, paragraph 62.

establishment of probable cause, a final revocation hearing wherein the parolee is entitled to:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489, 92 S. Ct. at 2604.

Thus, *Morrissey* did not require the Board itself hold the final revocation hearing. The circuit court found Adams was afforded due process without specifically determining whether KRS 439.341 requires the Board itself preside over the final revocation hearing. However, even putting that question to the side, Adams raises a genuine dispute about whether the Board engaged in a sufficient review of the hearing conducted by a hearing officer to pass muster. Adams alleged there is evidence available to question whether the Board has "full awareness of all the evidence presented" as required in *Jones*, 576 S.W.3d at 144.

There is currently a disagreement between panels of this Court concerning whether KRS 439.341 and *Jones* require the Board, or at least some

portion of its members, to preside over the final revocation hearing.[15]  However,

even assuming our Supreme Court will determine a review of a record created by a

---

[15] The Kentucky Supreme Court is reviewing motions for discretionary review of the decisions of this Court in *Hodge v. Commonwealth*, 2021-CA-1512-MR and *Shane v. Commonwealth*, 2022-CA-0135-MR.  The opinion in *Ivy v. Commonwealth*, 2022-CA-0369-MR became final when no motion for discretionary review was filed as Mr. Ivy's sentence had expired.

In *Hodge*, a panel of this Court determined the use of hearing officers to conduct final revocation hearings provided due process under *Morrissey* and *Jones.*

> Neither *Morrissey* nor *Jones* require that this second, final hearing be conducted before the Board; only that it be conducted with proper notice and procedures.
>
> Hodge was notified in writing of the alleged violations found after the first hearing was held.  The notification included a recitation of the proof against him, which was the testimony of the parole officer and the employee of Recovery Works.  Hodge was provided an opportunity to provide evidence and did so.  He was also able to cross-examine the witnesses against him.  The Administrative Law Judge was a neutral and detached hearing officer who provided written findings supporting his conclusion.  This second hearing complied with the requirements of due process.

No. 2021-CA-1512-MR, 2023 WL 453138, at \*3 (Ky. App. Jan. 27, 2023) (citations omitted).

The panel in *Shane* reached a different conclusion.

> Shane first argues that *Jones* and KRS 439.440 mandate the Board conduct his final revocation hearing. We agree.  In *Jones*, the Kentucky Supreme Court determined the Board's prevailing final revocation hearing procedure did not meet minimal due process.  Defendant had received a preliminary hearing before an ALJ where he was allowed to present witnesses and evidence, including mitigating testimony.  The ALJ found probable cause that defendant had violated the conditions of his supervision and referred the matter to the Board.  At the final hearing, defendant was not represented by counsel and was denied the opportunity to present witnesses or other evidence on the alleged violations.  Based upon the record created before the ALJ, the Board revoked defendant's supervision.
>
> On discretionary review, the Supreme Court held the Board's final revocation hearing procedure which consisted of merely reviewing the administrative record was constitutionally inadequate.  Because "the

-19-

hearing officer is sufficient, because of the factual allegation the chair of the Board acknowledged the practice of not reviewing complete records before making revocation determinations, we must remand. This constitutes a disputed fact between the parties and summary judgment was not appropriate.

While it may well be held to be sufficient for a hearing officer to conduct the final revocation hearing which the Board will then review, we must feel certain the Board did engage in a sufficient analysis of a record compiled by a hearing officer and they have not relinquished too fully their role. Given the status of the law, we must remand this matter to await the determination of the Kentucky Supreme Court.

<hr>

Board is the body charged with determining the ultimate findings of fact[,]" *Jones*, 576 S.W.3d at 144, a simple review of the administrative record is a "wholly unsatisfactory basis for [a revocation] decision." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 343-44, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). The Court concluded that defendant "had a constitutional right to a hearing pursuant to procedures that enabled him to make his case *to the Board*, who would then have full awareness of all the evidence presented and would be able to decide whether there were any mitigating factors in his favor." *Id.* (emphasis added).

Thus, *Jones* held it was constitutionally insufficient for the Board to base its revocation decision on a simple review of the administrative record. We read *Jones* as requiring the Board to conduct the final revocation hearing so it may make an informed decision as to revocation, having heard all the evidence. "Due process requires that the Parole Board . . . conduct the constitutionally-required final evidentiary hearing prior to revocation[.]" *Jones*, 576 S.W.3d at 133. The Board's delegation of Shane's final revocation hearing to an ALJ denied him due process.

No. 2022-CA-0135-MR, 2023 WL 4535569, at *2-3 (Ky. App. Jul. 14, 2023) (citations omitted).

In the same way, we are troubled by the apparent lack of consideration of "graduated sanctions."[16]  Per KRS 439.250(6)(b),[17] a person released from prison on supervision, like Adams, is on "community supervision." Those on supervision are entitled to consideration of graduated sanctions by whichever body has the authority to terminate their community supervision and reincarcerate them.

> Enacted in 2011 as part of the Public Safety and Offender Accountability Act, commonly referred to as HB 463, KRS 439.3106 provides:
>
> > Supervised individuals shall be subject to:
> >
> > > (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

---

[16] Graduated sanctions are defined in KRS 446.010(21) as follows:

> [A]ny of a wide range of accountability measures and programs for supervised individuals, including but not limited to electronic monitoring; drug and alcohol testing or monitoring; day or evening reporting centers; restitution centers; disallowance of future earned compliance credits; rehabilitative interventions such as substance abuse or mental health treatment; reporting requirements to probation and parole officers; community service or work crews; secure or unsecure residential treatment facilities or halfway houses; and short-term or intermittent incarceration[.]

*Helms v. Commonwealth*, 475 S.W.3d 637, 642 (Ky. App. 2015).

[17] KRS 439.250(6)(b):  "The placement of an individual under supervision after release from prison or jail, with conditions imposed by the board for a specified period[.]"

> (2) Sanctions other than revocation and
> incarceration as appropriate to the severity
> of the violation behavior, the risk of future
> criminal behavior by the offender, and the
> need for, and availability of, interventions
> which may assist the offender to remain
> compliant and crime-free in the community.

*Helms*, 475 S.W.3d at 638-39.

KRS 439.3107 expressly instructed the Department of Corrections to adopt a system of graduated sanctions for persons on community supervision.

> Logically, if a court cannot revoke supervised
> release solely on a zero-tolerance provision, probation
> and parole officers cannot find graduated sanctions are
> not available based on that same provision. It would be
> incongruous to say the Court may not consider such
> provisions but, based on that same provision, permit a
> probation and parole officer to reject graduated sanctions.
> Such an application would render KRS 439.3107 and 501
> [Kentucky Administrative Regulations] 6:250
> "meaningless or ineffectual."

*Helms*, 475 S.W.3d at 644-45 (citations omitted).

The Board argues it does not have to impose graduated sanctions and we agree it does not. However, it must employ its discretion in determining whether graduated sanctions are appropriate in any case which comes before it.

> Since KRS 439.3106 makes no distinction between
> probation or parole, this Court finds as a matter of law
> that the requirements of KRS 439.3106 must apply to the
> Board as well as to the courts. The Board's failure to
> make express findings on the record, oral or otherwise,
> demonstrating that the Board considered the

requirements of KRS 439.3106, before their final revocation of Murrell's parole, is a fatal flaw.

*Murrell*, 531 S.W.3d at 507.

The Board is subject to KRS 439.3106. Therefore, its determination must indicate sanctions other than revocation were considered and determined inappropriate. Nothing in the final decision rendered by the Board in this matter indicates it considered graduated sanctions. There remains a question of fact whether the Board did so consider before determining revocation was appropriate. Summary judgment was inappropriate given this dispute of fact.

## CONCLUSION

As there are disputes of material fact between the parties, the circuit court erred in granting summary judgment. If one views the disputed facts in a light most favorable to Adams, as the circuit court is so required, it cannot be concluded it would have been impossible for Adams to adduce facts requiring a judgment in his favor. This matter is remanded to the Boyle Circuit Court for proceedings consistent with this Opinion and the pending Opinion of the Kentucky Supreme Court.

EASTON, JUDGE, CONCURS AND FILES SEPARATE OPINION.

EASTON, JUDGE, CONCURRING: Because of the strictness of Kentucky's summary judgment standard, I agree with the decision to reverse the grant of summary judgment but write separately only to emphasize the limited questions

left for determination. As the Opinion recognizes, neither the circuit court nor this Court may make the decision to revoke parole. It would be difficult to conclude that the Parole Board was not justified in making its decision to revoke parole in the documented circumstances presented by this case. But this case presents important issues about required process, which is presently in flux and awaiting instruction from our highest court.

As the author of *Ivy*,[18] I have left no doubt of my view that neither Due Process nor present Kentucky statutes require the Parole Board itself to conduct the final revocation hearing. A valid process may include reliance on work performed by ALJs. Otherwise, the limited resources of the Parole Board itself would be overwhelmed to the detriment of Kentucky citizens who must be protected from those who violate parole, including sex offenders who do not comply with conditions. Revocation of parole would grind to a halt if the limited number of the Parole Board itself was required to conduct all new final hearings even after ALJs conduct a proper and sufficient final hearing process.

We all must await the decision of our highest Court which will provide direction on what the Parole Board must do for revocation. Given the

---

[18] Discussed in Footnote 14 of the Opinion.

comment by the Parole Board Chairperson about the limited review[19] currently being conducted, summary judgment should yield to proceedings in the circuit court to assess whether proper process was followed in this case with needed guidance from the Kentucky Supreme Court. We all hope this guidance will be announced soon.

One of the process questions to be answered will include how to address graduated sanctions. This case presents a too frequent reality of those with intellectual disability who are also sexual offenders and who may themselves be victims of sexual abuse or, as in this case, the result of an incestuous relationship. Despite limitations, such defendants must and should complete required treatment with appropriate practices to accomplish the completion of the treatment. Graduated sanctions may be appropriate or may not for Adams: the Parole Board makes that decision and does not have to use graduated sanctions. The question here is one of actual consideration of sanctions and at least a minimal documentation of why they were not utilized.

DIXON, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

---

[19] As stated in Footnote 13 of the Opinion, Adams alleged the Parole Board Chairperson made a statement that mitigation evidence is sometimes not considered by the Board because it is not in the ALJ's factual findings.

BRIEF FOR APPELLANT:        BRIEF FOR APPELLEES:

Katelyn E. Price              Seth E. Fawns
Frankfort, Kentucky         Frankfort, Kentucky